[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 29, 2008
THOMAS K. KAHN
CLERK

_____

No. 08-11365
Non-Argument Calendar

_____

D. C. Docket No. 07-00048-CR-4-SPM-WCS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIELLE M. KIMBROUGH,
a.k.a. Danielle Keeton Dodson,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(October 29, 2008)

Before BLACK, BARKETT and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty, Danielle M. Kimbrough appeals her 24-month

sentence for thirteen counts of making, uttering, or producing a forged security of an organization, in violation of 18 U.S.C. § 513(a). After review, we affirm.

Kimbrough worked as a bookkeeper at Association Management Sources, Inc. ("AMS"), which managed ten private associations and about twenty-five bank accounts those associations operated. Over a two-year period, Kimbrough forged eighty-five unauthorized checks and embezzled $183,851.94 from AMS. The checks bore the stamped signature of AMS's owner, Susan Cabrera, even though the signature stamp was to be used only in emergencies. The unauthorized checks, ranging from $500 to $3,500, were deposited into Kimbrough's personal bank account. Further investigation by a certified public accountant revealed that Kimbrough had moved money between AMS's client accounts and AMS's main account to conceal her activities.

Following her arrest, Kimbrough admitted to forging the checks and depositing them in her account. She also related that she deleted checks from the computer after they were printed and would reconcile AMS's records to cover the fraudulent checks.

Kimbrough's presentence investigation report ('PSI") recommended, inter alia, a two-level increase in Kimbrough's offense level, pursuant to U.S.S.G. § 2B1.1(b)(9)(C), because the offense involved sophisticated means. Specifically,

the PSI stated that, although Kimbrough's fraud scheme was not sophisticated in nature, Kimbrough "used elaborate means to fraudulently conceal the offense." Kimbrough objected to the sophisticated means enhancement, arguing that her offense was a "garden variety" embezzlement scheme.

At the sentencing hearing, Kimbrough testified that she would write a check to herself by entering an amount into a computer software program, QuickBooks, print out the check, and then delete the entry. In order to hide the transaction from the bank statements, Kimbrough would make fictitious entries in QuickBooks or write fictitious checks made payable to AMS from sources she fabricated. Kimbrough also two or three times transferred funds from one of AMS's client's accounts to AMS's primary account.

Cabrera, AMS's owner, also testified at the hearing. Cabrera explained that Kimbrough entered some of the transactions into different tax years in QuickBooks, such that they could not be detected, and, to uncover the full extent of Kimbrough's fraud, Cabrera had to hire a forensic accountant, a tax accountant and a CPA.

The district court overruled Kimbrough's objection to the sophisticated means enhancement, concluding that the offense was not a "garden variety" embezzlement. The district court explained that "[w]hile each step in the

3

defendant's crime was not sophisticated, the total scheme involved more than minimal planning, and it was sophisticated." The district court noted that even if it had sustained Kimbrough's objection, it would have imposed the same sentence as a variance from the guidelines "to reflect the extended duration of the offense, the complexity and level of deceit involved."

With a total offense level of 15 and a criminal history category of I, Kimbrough's advisory guidelines range was 18 to 24 months' imprisonment. After considering the factors in 28 U.S.C. § 3553(a), the district court imposed a 24-month sentence.

On appeal, Kimbrough argues that the district court erred in applying the sophisticated means enhancement because her offense did not involve any particularly complicated actions.[1]

Section 2B1.1(b)(9)(C) of the Sentencing Guidelines provides for a two-level increase in a defendant's offense level if the offense involved "sophisticated means." The commentary defines "sophisticated means" as:

> especially complex or especially intricate offense conduct pertaining to the execution or concealment of an offense. For example, in a telemarketing scheme, locating the main office of the scheme in one jurisdiction but locating soliciting operations in another jurisdiction

---

[1]In addressing a § 2B1.1(b)(9)(C) enhancement, we review the district court's factual findings for clear error and the application of the guideline provision to those facts de novo. United States v. Humber, 255 F.3d 1308, 1311 (11th Cir. 2001).

4

ordinarily indicates sophisticated means. Conduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts also ordinarily indicates sophisticated means.

U.S.S.G. § 2B1.1, cmt. n.8(B).

We conclude that the district court did not err in applying the two-level sophisticated means enhancement. Kimbrough's offense involved repeated fraudulent conduct occurring over an extended period of time, and, to conceal her offense, she used her specialized knowledge of her company's bookkeeping operations, created fictitious entries in the accounting software and wrote checks to her company from sources she fabricated.

We also reject Kimbrough's claim that the district court applied the wrong standard by stating that she engaged in more than minimal planning. Although the district court mentioned that the scheme involved more than minimal planning, the district court also found that Kimbrough's offense was not ordinary embezzlement and "was sophisticated." A review of the record as a whole indicates the district court was aware of and applied the applicable "sophisticated means" standard found in U.S.S.G. § 2B1.1(b)(9)(C).

**AFFIRMED.**